UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

STACIE K.,

                Plaintiff,                           **DECISION AND ORDER**

      v.

                                                6:20-CV-06840 EAW

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

## INTRODUCTION

Represented by counsel, plaintiff Stacie K. ("Plaintiff") brings this action pursuant to Title XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying her application for disability insurance benefits ("DIB"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g).

Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 13; Dkt. 14), and Plaintiff's reply (Dkt. 15). For the reasons discussed below, Plaintiff's motion (Dkt. 13) is granted in part, the Commissioner's motion (Dkt. 14) is denied, and the matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.

## BACKGROUND

Plaintiff protectively filed her application for DIB on January 9, 2018. (Dkt. 11 at 128, 307-13).[1] In her application, Plaintiff alleged disability beginning January 5, 2018. (*Id.* at 128, 307). Plaintiff's application was initially denied on April 2, 2018. (*Id.* at 128, 240-45). At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") Asad M. Ba-Yanus in Buffalo, New York, on August 22, 2019. (*Id.* at 143-206). On September 16, 2019, the ALJ issued an unfavorable decision. (*Id.* at 128-38). Plaintiff requested Appeals Council review; her request was denied on August 21, 2020, making the ALJ's determination the Commissioner's final decision. (*Id.* at 5-11). This action followed.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept

---

[1]  When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.   Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Bowen v. City of N.Y.*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of

Regulation No. 4 (the "Listings").  *Id*. § 404.1520(d).  If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (*id*. § 404.1509), the claimant is disabled.  If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments.  *See id*. § 404.1520(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work.  *Id*. § 404.1520(f).  If the claimant can perform such requirements, then he or she is not disabled.  If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled.  *Id*. § 404.1520(g).  To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience.  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

**I.      The ALJ's Decision**

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 404.1520.  Initially, the ALJ determined that Plaintiff met the insured status requirements of the Act through September 30, 2022.  (Dkt. 11 at 130).  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity from her alleged onset date of January 5, 2018.  (*Id*.).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of: degenerative disc disease, spinal stenosis, degenerative joint disease of the knees, osteoporosis, fibromyalgia, and chiari-I malformation status-post revision in April 2017. (*Id.*).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.*). The ALJ particularly considered the criteria of Listings 1.00, 3.00, 11.00, 12.00, and 14.00 in reaching his conclusion. (*Id.* at 130-33).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), with the additional limitations that:

> except that she may frequently kneel and crawl; and occasionally stoop, and crouch, and climb ramps and stairs; never climb ladders, ropes, or scaffolds; and must avoid all workplace hazards, including unprotected heights and dangerous machinery.

(*Id.* at 133). At step four, the ALJ found Plaintiff capable of performing her past relevant work as an office manager and customer service representative. (*Id.* at 136). The ALJ relied on the testimony of a vocational expert ("VE") to make the alternative finding that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of order clerk, addresser, and parimutuel ticket checker. (*Id.* at 137-38). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (*Id.* at 38).

II. **<u>Remand of this Matter for Further Proceedings is Necessary</u>**

Plaintiff asks the Court to reverse or, in the alternative, remand this matter to the Commissioner, arguing: (1) the Appeals Council improperly rejected additional medical evidence of Plaintiff's post-decision surgeries; and (2) the ALJ erred in rejecting Plaintiff's subjective complaints. (Dkt. 13-1 at 12-20). Because the Appeals Council erred in rejecting evidence of Plaintiff's post-decision surgeries, the matter is remanded for further administrative proceedings.

A. **<u>Appeals Council Review</u>**

Following her administrative hearing, Plaintiff submitted additional evidence including records from a November 18, 2019 back surgery and a July 6, 2020 posterior fossa pseudomeningocele surgical washout with lumbar drain placement to address effects of Plaintiff's prior chiari I surgery. (Dkt. 11 at 12-119). The Appeals Council stated that the additional evidence did not relate to the period of disability at issue, and therefore did not affect the decision as to whether Plaintiff was disabled beginning on or before September 16, 2019. (*Id.* at 6). Plaintiff argues remand is necessary because such evidence supported allegations of limitations from impairments of which Plaintiff complained of during the relevant period. The Court agrees.

The Appeals Council must consider "new" and "material" evidence if it "relates to the period on or before the date of the administrative law judge hearing decision" and there is "reasonable probability that the additional evidence would change the outcome of the decision," and a party demonstrates good cause for not submitting the evidence earlier. 20 C.F.R. §§ 404.970(a)(5); 404.970(b). Medical evidence generated after an ALJ's decision

cannot be deemed irrelevant solely based on timing. *Pollard v. Halter*, 377 F.3d 183, 193 (2d Cir. 2004) ("Although the new evidence consists of documents generated after the ALJ rendered his decision, this does not necessarily mean that it had no bearing on the Commissioner's evaluation of [Plaintiff's] claims."). "For example, subsequent evidence of the severity of a claimant's condition may demonstrate that 'during the relevant time period, [the claimant's] condition was far more serious than previously thought.'" *Newbury v. Astrue*, 321 F. App'x 16, 18 n.2 (2d Cir. 2009) (quoting *Pollard*, 377 F.3d at 193)). However, evidence that does not provide additional information about the claimant's functioning during the relevant time period, but instead relates to his or her functioning at some later point in time, need not be considered by the Appeals Council. *See Gonzalez v. Comm'r of Soc. Sec.*, No. 19-CV-06230, 2020 WL 4548031, at *7 (W.D.N.Y. Aug. 6, 2020) ("Indeed, evidence generated after an ALJ's decision cannot be deemed irrelevant solely based on timing, but the Appeals Council does not have to consider evidence that does not provide additional information about the claimant's functioning during the relevant time period." (citing *Pulos v. Comm'r of Soc. Sec.*, 346 F. Supp. 3d 352, 362 (W.D.N.Y. 2018))).

Here, the newly submitted evidence details Plaintiff's November 2019 back surgery and July 6, 2020 brain surgery. (Dkt. 11 at 12-119). In addition, Plaintiff's neurosurgeon, Kevin Walter, M.D. opined on August 11, 2020, that Plaintiff was completely disabled as a result of her ongoing issues associated with her cerebrospinal fluid leak. (*See id.* at 20). The Appeals Council summarily rejected the new evidence, stating:

> The Administrative Law Judge decided your case through September 16, 2019. This additional evidence does not relate to the period at issue.

>Therefore, it does not affect the decision about whether you were disabled beginning on or before September 16, 2019.

(*Id.* at 6).  To the extent that the Appeals Council rejected the evidence solely because the records postdated the ALJ's decision, the Appeals Council erred as a matter of law because "[a]dditional evidence may relate to the relevant time period even if it concerns events after the ALJ's decision, provided the evidence pertains to the same condition previously complained of by the plaintiff."  *Hightower v. Colvin*, No. 12-CV-6475, 2013 WL 3784155, at *3 (W.D.N.Y. July 18, 2013) (citing *Brown v. Apfel*, 174 F.3d 59, 64-65 (2d Cir. 1999)).  Here, Plaintiff's back surgery took place just two months after the ALJ's decision and her second brain surgery occurred within ten months of the ALJ's decision.  These surgeries relate to Plaintiff's severe impairments of degenerative disc disease, spinal stenosis, and chiari malformation status post revision.  Accordingly, the evidence at issue relates to the relevant time period.

The records "were also material in the sense that, if considered by the Appeals Council, they would have undermined key aspects of the ALJ's decision."  *Wilbon v. Colvin*, No. 15-CV-756-FPG, 2016 WL 5402702, at *6 (W.D.N.Y. Sept. 28, 2016).  "Courts throughout the Second Circuit have held that evidence of a post-decision surgery may be relevant and material to whether a claimant was previously disabled."  *Id.*; *see also Lani May G. v. Comm'r of Soc. Sec.*, No. 1:20-CV-6221 (CJS), 2021 WL 3884232, at *8 (W.D.N.Y. Aug. 31, 2021) ("Here, the medical evidence submitted to the Appeals Council involved the same condition that necessitated two prior surgeries within the period at issue, and potentially indicated a worsening in Plaintiff's condition sufficient to warrant a third surgery.  Based on the new evidence submitted by Plaintiff, then, the ALJ or Appeals

- 8 -

Council might be persuaded to find that, during the relevant time period, Plaintiff was more limited in her neck movements or other capabilities than the ALJ initially assessed."); *Balke v. Barnhart*, 219 F. Supp. 2d 319, 321-22 (E.D.N.Y. 2002) (remanding for consideration of new evidence showing that plaintiff underwent three surgeries subsequent to date of ALJ's decision); *Clemons v. Astrue*, No. 12-CV-269, 2013 WL 4542730, at *7 (W.D.N.Y. Aug. 27, 2013) (remanding for consideration of new evidence consisting of plaintiff's arthroscopic surgery subsequent to date of ALJ's decision). "This is especially true where, as here, the ALJ discounted the claimant's credibility." *Wilbon*, 2016 WL 5402702, at *6.

In his decision, the ALJ found that Plaintiff's allegations were somewhat consistent with the treatment record, but not sufficiently limiting to establish disability. Despite acknowledging Plaintiff's hearing testimony and the medical evidence of record, the ALJ ultimately concluded that:

> Overall, the diagnostic imaging of [Plaintiff's] back and knees do not suggest disabling limitation. [Plaintiff] has had very little treatment for her fibromyalgia, obesity, and osteoporosis. While [Plaintiff] did undergo surgery for her Chiari-I malformation, which certainly suggests that the symptoms were genuine; it is offset by the fact that the record reflects that the surgery was generally successful in relieving the symptoms. Since the alleged onset date of disability, [Plaintiff] has not generally received the type of medical treatment one would expect for a disabled individual.

(Dkt. 11 at 135).

In significant part, the ALJ discounted Plaintiff's limitations by highlighting that she had not received the type of treatment as would be expected for a disabled individual. However, just two months after the date of the ALJ's decision, Plaintiff underwent a back surgery after a September 2019 MRI showed right-sided disc extrusion with compression

of the L5 nerve root. (*See id.* at 106-08). The surgeon noted that Plaintiff has been treated with conservative measures including nonsteroidal anti-inflammatories, medication, physical therapy, and lumbar epidural steroid injections with no benefit over the previous two-year period. (*Id.* at 108). The treatment note reflects that proceeding with a lumbar microdiscectomy was the reasonable next step. (*Id.*). Consequently, the November 2019 surgery confirms the severity of Plaintiff's back condition and calls into question the factual predicate for the ALJ's finding that Plaintiff was not fully credible. In other words, the ALJ's conclusion that Plaintiff's routine and conservative treatment was inconsistent with her allegations of disability and the medical evidence in the record is undermined by Plaintiff's surgery. *Kellner v. Comm'r of Soc. Sec.*, No. 17-CV-947S, 2019 WL 2559516, at *5 (W.D.N.Y. June 21, 2019) (new treatment notes and imaging studies were material because they showed that initial success of back surgery, which was integral to ALJ's decision, did not continue, and because "the ALJ relied on the absence of such evidence in denying Plaintiff's application for benefits . . . there is a reasonable probability this new evidence would change the outcome of the ALJ's decision").

Similarly, in June of 2020, following complaints of persistent headaches, Plaintiff was found to have a pseudomeningocele. (Dkt. 11 at 49). On July 6, 2020, Plaintiff underwent a posterior fossa pseudomeningocele washout and closure with lumbar drain placement. (*Id.*). An August 11, 2020 post-operative treatment note reflected that while surgery was uncomplicated, Plaintiff had a recurrence of headaches requiring a return to the emergency room. (*Id*. at 21). Dr. Walter ordered a spinal tap and opined that Plaintiff was 100% temporarily disabled pending further work-up and likely surgery for the internal

spial fluid leak. (*Id.* at 16, 25). As with Plaintiff's back condition, the ALJ's conclusion that Plaintiff's previous brain surgery was generally successful in relieving her symptoms is undercut by the additional records. *See Kellner,* 2019 WL 2559516, at *5.

The Court is not persuaded by the Commissioner's argument that remand is unnecessary because the "treatment records were not relevant to the period at issue in this case and would not affect the ALJ's determination." (Dkt. 14-1 at 17). While the records document post-decision deterioration of Plaintiff's conditions, the additional treatment unquestionably consists of ongoing treatment for the same severe impairments that were before the ALJ, and does not constitute evidence of a separate and distinct disability. At the same time, the records are not merely cumulative of the records considered by the ALJ as they evidence surgical treatment for those conditions that provide support for Plaintiff's claims of impairment. Considering that the first surgery took place just two months after the date of the ALJ's decision and the second less than eight months later, the records at issue are material because they undermine key aspects of the ALJ's decision, including the ALJ's credibility analysis and consideration of the relative conservative treatment Plaintiff had undergone for these conditions. Accordingly, remand on this basis is warranted. *See, e.g., Steven N. v. Berryhill*, No. 1:17-cv-00427, 2018 WL 6629681, at *10 (W.D.N.Y. Dec. 19, 2018) (remand necessary to consider new evidence consisting of doctor's opinion that plaintiff's condition deteriorated and required further surgery because it undermined ALJ's determination that plaintiff's improvement was inevitable); *Wilbon*, 2016 WL 5402702, at *6 (remand necessary to consider new evidence consisting of doctor's report which documented plaintiff's subsequent surgery and worsening condition because it confirmed

"[p]laintiff's hearing testimony and undermine[d] the ALJ's credibility analysis"); *Clemons*, 2013 WL 4542730, at *7 (remand necessary to consider new evidence consisting of MRI reports and subsequent arthroscopic surgery because such evidence sheds new light on seriousness of plaintiff's condition).

### B. Plaintiff's Remaining Arguments

As set forth above, Plaintiff has identified an additional reason why she contends the ALJ's decision was not supported by substantial evidence. However, because the Court has already determined, for the reasons previously discussed, that remand of this matter for further administrative proceedings is necessary, the Court declines to reach that issue. *See, e.g., Bell v. Colvin*, No. 5:15-CV-01160 (LEK), 2016 WL 7017395, at *10 (N.D.N.Y. Dec. 1, 2016) (declining to reach arguments "devoted to the question whether substantial evidence supports various determinations made by [the] ALJ" where the court had already determined remand was warranted); *Morales v. Colvin*, No. 13cv06844 (LGS) (DF), 2015 WL 2137776, at *28 (S.D.N.Y. May 4, 2015) (the court need not reach additional arguments regarding the ALJ's factual determinations "given that the ALJ's analysis may change on these points upon remand").

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt. 13) is granted to the extent that the matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order. The Commissioner's

motion for judgment on the pleadings (Dkt. 14) is denied. The Clerk of Court is directed to enter judgment and close this case.

    SO ORDERED.

                                                               _____
                                                               ELIZABETH A. WOLFORD
                                                               Chief Judge
                                                               United States District Court

Dated:       September 12, 2022
                 Rochester, New York

motion for judgment on the pleadings (Dkt. 14) is denied. The Clerk of Court is directed to enter judgment and close this case.

    SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: September 12, 2022
       Rochester, New York